UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARCHELL WRIGHT on behalf of K.M.W.                                    PLAINTIFF

v.                                                     CIVIL ACTION NO. 3:11CV-526-S

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                             DEFENDANT

## MEMORANDUM OPINION

This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation (hereinafter "report") of the United States Magistrate Judge that the Commissioner's final decision denying a child's supplemental security income ("SSI") benefits to K.M.W. K.M.W., born on September 13, 2007, had various medical challenges at birth and early in life. Her grandmother and legal guardian, Marchell Wright, filed a claim for SSI benefits on November 13, 2007, asserting that K.M.W. was disabled at birth.

Administrative Law Judge ("ALJ") Michael Nichols conducted a hearing on March 10, 2010. K.M.W. appeared at the hearing with her grandmother and counsel. Medical expert Dr. James Belt testified telephonically and Marchell Wright also testified. After the hearing, ALJ Nichols ordered further evaluation of K.M.W. by Joseph L. Bargione, Ph.D.

On August 16, 2010, ALJ Nichols entered a decision denying benefits to K.M.W. He found, in part, that:

> ...(3) The claimant has the following severe impairments: history of neonatal herpes simplex encephalitis now resolved, history of seizures associated with febrile state now resolved, history of mild developmental delay, and history of asthma adequately controlled (20 C.F.R. 416.924(c)).

>(4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925, 416.926).
>
>(5) The claimant does not have an impairment or combination of impairments that functionally equals the listing (20 C.F.R. 416.924(d) and 416.926(a)).
>
>(6) The claimant has not been disabled, as defined by the Social Security Act, since Nov. 13, 2007, the date the application was filed (20 C.F.R. 416.924(a)).

The magistrate judge found that the ALJ's decision was supported by substantial evidence in the record, and recited many of the same findings as the ALJ. The plaintiff contends that(1) the magistrate judge erred in concluding that substantial evidence in the record supported the ALJ's finding that K.M.W. did not demonstrate a "deficit in adaptive functioning;" and (2) the magistrate judge erred in concluding that substantial evidence supported the ALJ's finding that K.M.W. was not markedly impaired in the functional domains of "interactions and relations with others" or "health and physical well-being."

In reviewing a decision of the Commissioner under 42 U.S.C. § 405(g), the Commissioner's findings must be affirmed if supported by substantial evidence found upon review of the record as a whole and rendered under the correct legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The magistrate judge found that the ALJ employed the correct legal standard in assessing whether K.M.W. is disabled. The plaintiff does not take issue with the standard employed, but rather claims error in the conclusions reached from the evidence of record.

The plaintiff urges that the evidence mandates a finding that K.M.W. is mentally retarded, in accordance with 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05D:

>112.05 *Mental Retardation*: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
> ...
> D.  A valid verbal, performance or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

The regulations state that

> Listing 112.05 (Mental Retardation) contains six sets of criteria.  If an impairment satisfied the diagnostic description in the introductory paragraph and any one of the six sets of criteria, we will find the child's impairment meets the listing.  For listings 112.05D and 112.05F, we will assess the degree of functional impairment the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, i.e., is a "severe" impairment(s), as defined in § 416.924(c).  If the additional impairment(s) does not cause limitations that are "severe" as defined in § 416.924(c), we will not find that the additional impairment(s) imposes an additional and significant limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.00.

The magistrate judge concurred in the ALJ's finding that K.M.W. did not demonstrate a deficit in adaptive functioning, as required to satisfy the diagnostic description in the introductory paragraph for the listed impairment.  The plaintiff takes issue with this finding in light of the results of the Vineland Behavioral Scales administered by Dr. Joseph Bargione, Ph.D. in June, 2010.  K.M.W.'s score of 74 in communication, 85 in daily living skills, 72 in social skills, and 79 in motor skills, gave her an adaptive behavior composite score of 74, falling in the moderately low range, higher than 4% of the children her age.  (Administrative Record ("AR") pp. 581-82).  The plaintiff contends that it "defies logic" to find that a child with such a Vineland score could be found not to have a "deficit in adaptive functioning," as required by the diagnostic description in the introductory paragraph for the listed impairment of Mental Retardation.  We find this argument to be without merit.

First, the United States Supreme Court has recognized that "adaptive functioning" involves an individual's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v.Doe by Doe*, 509 U.S. 312, 329,113 S.Ct. 2637, 2647, 125 L.Ed.2d 257 (1993), *citing* Manual of Mental Disorders, pp. 28-29. The Vineland Adaptive Behavior Scales is but one diagnostic tool used in assessing adaptive functioning.

Second, and more importantly, the Vineland Adaptive Behavior Scales was *not* administered to K.M.W., but rather to the plaintiff, K.M.W.'s grandmother.[1] *See,* AR, pp. 581-82. The Vineland Adaptive Behavior Scales is a parent/caregiver interview tool. The ALJ stated that

> Mild delays were noted on Vineland adaptive function scales with 74 in communication, 85 in daily living skills, 72 in social skills and 79 in motor skills. While overall development delays were noted according to a behavioral profile based on information provided by her grandmother, the grandmother contradictorily advised the claimant could point to three body parts, point to two objects she wanted, urinate in a toilet, imitate simple movements, play with common household objects, throw a ball and open doors.

AR, p. 29. In light of these and other findings, the ALJ stated, "As will be shown in the forthcoming analysis of the domains, it appears the claimant's adaptive functioning seems much higher than the IQ scores indicate."  K.M.W. was administered the Wechsler Preschool and Primary Scales of Intelligence – Third Ed.. K.M.W. was found to have a verbal IQ of 77, a Performance IQ of 60, and a Fill-Scale IQ of 64. However, the ALJ noted than Dr. Bargione specifically advised that the IQ scores be viewed with caution due to K.M.W.'s very young age. AR, p.29. Dr. Bargione found a

---

[1] To the extent that the Magistrate Judge's Report states that Dr. Bargione administered the Vineland Adaptive Behavior Scales to K.M.W. (Rpt., p. 10), the statement is rejected. The ALJ correctly noted that the interview was conducted of the grandmother.

single marked limitation in K.M.W.'s ability to acquire and use information. (AR 585). He diagnosed Axis I disorder of childhood, NOS with no Axis II diagnosis. *Id.*

As recited at length by the magistrate judge, the ALJ related the evaluation of K.M.W. in the six functional domains, in which Dr. Bargione noted that K.M.W. explored her environment, played with toys, showed an interest in books, and appeared alert and curious. She was able to walk, run, throw a ball, open a door, climb, manipulate objects with her hands, drink from a cup, remove her clothes without assistance, perform grooming activities, and indicate if she was hungry. K.M.W.'s grandmother reported to Dr. Bargione that K.M.W. enjoyed playing with her two brothers and the other children in the neighborhood, and enjoyed playing with her baby dolls and stroller. Consistent with these observations, in a 2009 assessment of K.M.W., Julie Murray observed that K.M.W. would search for hidden objects, place pegs on a pegboard, and could attend to a preferred activity for up to three minutes. Additionally, in 2010 after a neurology follow-up visit, Darren M. Farber, D.O. noted that "K.M.W. continues to thrive and do quite well considering her prior history," and "has [a] very mild cognitive delay."

All of this evidence the magistrate judge found substantially supported the ALJ's conclusion that K.M.W.'s adaptive functioning appeared from the record to be higher than her IQ scores might otherwise indicate. We agree. Therefore, we also agree that the ALJ's conclusion that "the claimant does not have an impairment or combination of impairments that result in either "marked" limitations in two domains functioning or "extreme" limitation in one domain of functioning," and thus K.M.W. is not disabled, as defined in the Social Security Act.

The plaintiff points to evidence which she contends should have led the ALJ to conclude that K.M.W. has a "marked limitation" in the domains of "interacting and relating with others" and

"health and physical well-being." However, as noted in *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*),*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984), "The substantial evidence standard allows considerable latitude to administrative decision makers...An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." As the magistrate judge correctly found that the record evidence substantially supported the ALJ's findings of less than marked limitation in these two domains, we must overrule the plaintiff's claim of error.

Therefore, the court having conducted a *de novo* review of the decision of the ALJ in light of the objections to the magistrate judge's report and the record as a whole, and for the reasons set forth herein, the magistrate judge's Findings of Fact, Conclusions of Law, and Recommendation will be accepted and adopted.[2] The decision of the ALJ denying benefits in this case will be affirmed.

IT IS SO ORDERED.

May 30, 2012



**Charles R. Simpson III, Judge**
**United States District Court**

---

[2] with the exception noted earlier in this opinion.